**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ISMAILA NIANGANE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 3:26-cv-00815 |
| | ) | Judge Stephanie L. Haines |
| MARKWAYNE MULLIN, *et al.,* | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

**<u>MEMORANDUM OPINION</u>**

Ismaila Niangane ("Petitioner") is an immigration detainee who submitted a Petition for Writ of Habeas Corpus ("Petition") on May 4, 2026. ECF No. 1. In the Petition, Petitioner challenges his lengthy immigration detention and seeks an order requiring immediate release. *Id.* at ¶ 93. For the reasons that follow, the Petition will be **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

Petitioner is a native and citizen of Senegal. *Id.* at ¶ 1. He entered the United States without admission or parole at or near San Ysidro, California on September 14, 2023. *Id.* at ¶ 25; *Niangane v. Noem*, No. 3:25-cv-00488-SLH-KT (W.D. Pa. Jan. 6, 2026), ECF No. 12-1, p. 2. Petitioner was arrested and later released on his own recognizance, with the condition that he attend immigration court hearings and report to Immigration and Customs Enforcement ("ICE") appointments as required. *Id.* at ECF No. 12-2, p. 11. On Nov. 22, 2024, Petitioner filed a petition for asylum and application for employment authorization. *Id.* at ECF No. 12-2, p. 8. His employment authorization was subsequently approved until Dec. 22, 2029. *Id.*

1

On October 27, 2025, Petitioner reported to ICE's Philadelphia field office for a scheduled check-in appointment and was detained. ECF No. 1, ¶ 1. On February 10, 2026, an immigration judge ("IJ") granted the Government's motion to pretermit Petitioner's asylum application based on the applicability of the United States Asylum Cooperative Agreement with Uganda and Petitioner was ordered removed to Uganda. ECF No. 1-7. Petitioner appealed that decision on March 3, 2026. ECF No. 1-8. His appeal remains pending before the Board of Immigration Appeals. ECF No. 9, p. 1.

On November 12, 2025, an IJ denied Petitioner's release on bond based on a lack of jurisdiction. *Niangane v. Noem*, No. 3:25-cv-00488-SLH-KT (W.D. Pa. Jan. 2, 2026), ECF No, 12-2. Petitioner thereafter filed his first habeas petition, and this Court ordered Respondents to provide him an individualized bond hearing under Section 1226(a). *Id.* at ECF No. 17. A hearing was held on January 27, 2026, after which the IJ denied bond because Petitioner failed to establish that he was not a flight risk. ECF No. 1-5.[1] Petitioner appealed that bond determination on January 29, 2026. ECF No. 1-6. In his notice of appeal, he challenged the adequacy of the January proceeding, arguing, among other things, that it did not provide an individualized custody determination and instead substituted one unconstitutional basis for detention for another. *Id.*

At a subsequent bond hearing on March 11, 2026, the IJ characterized the proceeding as Petitioner's third bond redetermination hearing and referred to a December 24, 2025 hearing at which Petitioner had purportedly been found to present a flight risk. ECF No. 8-1.[2] The IJ denied bond after concluding that Petitioner had not demonstrated materially changed circumstances and described the January bond request as also having been denied for the same reason. *Id.* Petitioner

---

[1] The IJ's written decision repeatedly states that the hearing was ordered by the United States District Court for the District of New Jersey. In fact, it was ordered by this Court, located in the Western District of Pennsylvania.
[2] The Court notes that neither party has previously identified that December hearing in the present record.

now files a second habeas petition and seeks immediate release based on a prolonged detention theory. ECF No. 1.

## II.    DISCUSSION

Petitioner argues that his continued detention has become constitutionally unreasonable. For relief, he asks for immediate release. Respondents oppose and argue that Petitioner's reliance on *Zadvydas v. Davis*, 533 U.S. 678 (2001), is misplaced because he is not subject to a final removal order and his argument that removal is not likely in the reasonably foreseeable future is premature. Respondents do not separately address Petitioner's argument that, notwithstanding the absence of a final removal order, his detention has become constitutionally unreasonable.

### A.  Petitioner is entitled to a new bond hearing.

In response to Petitioner's first habeas petition, this Court ordered Respondents to provide Petitioner an individualized bond hearing under 8 U.S.C. § 1226(a). *Niangane v. Noem*, No. 3:25-cv-00488-SLH-KT, ECF No. 17 (W.D. Pa. Jan. 20, 2026). A bond hearing was held on January 27, 2026, and the IJ denied bond. ECF No. 1-5. The record is unclear, however, whether the January hearing was conducted as the Section 1226(a) hearing ordered by this Court or was instead treated as a successive redetermination requiring materially changed circumstances. The January written decision states that Petitioner failed to establish that he was not a flight risk, while a subsequent March decision characterizes the January denial as based on Petitioner's failure to demonstrate materially changed circumstances. *Compare* ECF No. 1-5, *with* ECF No. 8-1. If the latter standard governed the January hearing, the proceeding did not implement the individualized Section 1226(a) hearing the Court ordered. The question therefore is, considering both the duration of his detention and the circumstances of the process afforded to date, whether continued detention without the Government ever bearing the burden to justify detention has become constitutionally

unreasonable.

This Court has previously concluded that Third Circuit precedent does not categorically foreclose subsequent bond hearings in prolonged detention cases. *Fadel v. Warden*, No. 3:26-cv-00625, 2026 WL 1649907, at *2-3 (W.D. Pa. June 8, 2026). In *Fadel*, the Court applied the *German Santos* factors[3] and concluded that continued detention had become unreasonable, requiring a subsequent bond hearing at which the Government would bear the burden. *Id.* at *2-5. Here, Petitioner's claim does not rest solely on the duration of detention, which now stands at over nine months. He has also challenged the adequacy of the January hearing from the outset, and the administrative record itself is unclear as to whether that proceeding was conducted as the individualized Section 1226(a) hearing ordered by this Court or instead as a subsequent bond redetermination requiring materially changed circumstances.

Under these circumstances, the Court finds the *German Santos* framework useful in determining whether Petitioner's continued detention—despite the nominal availability of Section 1226(a) custody review—has become constitutionally unreasonable. That inquiry is "highly fact-specific . . . ." *German Santos v. Warden Pike Cty. Corr. Facility*, 965 F.3d 203, 210 (3d Cir. 2020). The Court addresses the relevant factors, which include: (1) the duration of detention; (2) the likelihood of continued detention; (3) the reasons for any delay; and (4) the conditions of confinement. *Id.* at 211.

## 1. Duration

The first and "most important" factor is the duration of detention. *Id.* Although the Third

---

[3] Although *German Santos* involved detention under Section 1226(c), other courts have applied its due process analysis in other prolonged detention contexts. *See, e.g., Maksaddzhon A. v. Pittman*, No. 25-13734, 2025 WL 3648710, at *2 (D.N.J. Dec. 17, 2025) (collecting cases applying *German Santos* to prolonged detention under Section 1225(b)); *A.J.R. v. Rokosky*, No. 25-17279, 2026 WL 592136, at *2-3 (D.N.J. Mar. 3, 2026) (applying *German Santos* where petitioner had previously received a Section 1226(a) bond hearing).

4

Circuit declined to adopt a bright-line rule for when immigration detention becomes unreasonable, six months has repeatedly served as a meaningful benchmark in immigration detention cases. In *Demore v. Kim*, the Supreme Court upheld detention of approximately six months as only "somewhat longer than average." 538 U.S. 510, 530-31 (2003). And in *Zadvydas*, although addressing detention under Section 1231 after a final order of removal, the Supreme Court treated six months as the period presumptively reasonable before continued detention required further justification. 533 U.S. at 701. The Third Circuit has also recognized that detention lasting between six months and one year may become constitutionally suspect. *See Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469, 478 (3d Cir. Apr. 9, 2015). While these cases do not establish a fixed six-month rule here, they confirm that Petitioner's nine-month detention is sufficiently lengthy to weigh in favor of relief. Accordingly, the Court finds the duration of Petitioner's detention is substantial and weighs strongly in favor of granting relief.

## 2. Likelihood of continued duration

The second factor is whether the detention is likely to continue. *German Santos*, 965 F.3d at 211. When removal proceedings "are unlikely to end soon," the prospect of additional confinement weighs toward a finding of unreasonableness. *Id.* This factor also favors Petitioner because his removal proceedings have not ended. The immigration court pretermitted his asylum application and ordered him removed to Uganda, but Petitioner appealed that decision. As of this writing, that appeal remains pending and resolution may take additional months. If Petitioner's appeal is remanded, proceedings may continue still longer. The relevant point for this factor is not whether Petitioner will ultimately prevail but rather that there is no imminent end date to detention. Continued detention is therefore likely to last for an additional, indeterminate period.

## 3. Reasons for delay

5

The third factor concerns the reasons for delay, including whether either party has caused unnecessary delay through continuances, careless errors, or bad-faith conduct. *German Santos*, 965 F.3d at 211. Courts should not hold a detainee's good-faith pursuit of immigration relief against him, even if his applications or appeals prolong the proceedings, because doing so would effectively punish him for pursuing available legal remedies. *Id.* At the same time, Government delay does not require a finding of bad faith to become relevant because detention may become unreasonable even where the Government has handled the proceedings reasonably. *Id.* In *German Santos* itself, the Third Circuit treated this factor as neutral where neither party bore meaningful responsibility for the delay. *Id.* at 212.

Here, this factor is neutral. The record does not show that Petitioner has delayed these proceedings in bad faith. He filed an asylum application, litigated his claim for relief, and appealed the IJ's pretermittal of his application. Those are lawful steps in the removal process. The Court will not penalize Petitioner for pursuing available legal remedies. Nor have Respondents been shown to have caused unnecessary delay through carelessness or bad faith. The Court finds the delay appears attributable to the ordinary course of removal and appellate proceedings.

### 4. Conditions of confinement

The fourth factor is whether the conditions of confinement are meaningfully different from criminal punishment. *German Santos*, 965 F.3d at 211. The parties have not submitted evidence concerning Petitioner's specific conditions of confinement. It is undisputed, however, that Petitioner is detained at the Moshannon Valley Processing Center ("MVPC"). Further, a court in this District previously recognized that conditions at MVPC may resemble prison-like confinement. *See, e.g., C.B. v. Oddo*, No. 3:25-cv-00263, 2025 WL 2977870, at *7 (W.D. Pa. Oct. 22, 2025). And, as with any civil immigration detention, Petitioner is not free to leave. In the

absence of a more developed record, this factor weighs at least somewhat in Petitioner's favor.

### 5.  Balance of factors

Considering the *German Santos* factors together, the Court concludes that Petitioner's continued detention has become constitutionally unreasonable. Petitioner has been detained for more than nine months, his merits appeal remains pending without a clear timeline for resolution, neither party bears meaningful responsibility for the resulting delay, and Petitioner remains confined at MVPC under conditions that, at least in practical effect, resemble penal detention.

The Court does not hold that every Section 1226(a) detainee who previously received a bond hearing is automatically entitled to a subsequent hearing once detention reaches a particular length. Nor does the Court review the discretionary merits of the IJ's prior bond denials. Rather, under the specific circumstances presented here, the process afforded to date is no longer sufficient. Petitioner is therefore entitled to a new bond hearing at which the Government must prove, by clear and convincing evidence, that continued detention is necessary because Petitioner poses a danger to the community or a risk of flight.

## III.   CONCLUSION

For the reasons set forth herein, the Petition will be **GRANTED IN PART** and **DENIED IN PART**. An appropriate Order follows.

<u>**ORDER**</u>

**AND NOW**, this 7th day of August, 2026, for the reasons stated in the Memorandum Opinion, it is hereby **ORDERED** that:

1.  The Petition for Writ of Habeas Corpus, ECF No. 1, is **GRANTED IN PART** insofar as Petitioner challenges the constitutionality of his continued detention and **DENIED IN PART** insofar as Petitioner seeks immediate release.

7

2.  As relief for the constitutional violation identified above, Respondents shall provide Petitioner with a new individualized bond hearing before an immigration judge. At that hearing, the Government shall bear the burden of proving, by clear and convincing evidence, that Petitioner's continued detention is necessary because Petitioner poses a danger to the community or a risk of flight or both.

3.  The bond hearing shall include an individualized determination of whether continued detention remains justified. The immigration judge shall state the reasons for the custody determination orally on the record or in writing. If bond is denied, the immigration judge shall identify the principal facts and evidence relied upon in determining that Petitioner poses a danger to the community, a flight risk, or both. Nothing in this Order requires the immigration judge to reach any particular custody determination.

4.  The Government shall arrange for an individualized bond hearing to be conducted by an immigration judge by Friday, September 4, 2026.

5.  If Petitioner is not provided with a bond hearing by Friday, September 4, 2026, or if the immigration judge declines jurisdiction or denies eligibility for a bond hearing based on *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), or the statutory interpretation of Section 1225(b)(2) that this Court has rejected, Respondents shall immediately release Petitioner from custody.

6.  If Petitioner is granted bond and the Government appeals the immigration judge's decision, then, upon notification to this Court, the writ shall issue and Petitioner shall be automatically released from custody.

8

7. With no further action required by the Court at this time, the Clerk of Court shall mark this matter closed.

/s/ *Stephanie L. Haines*
Stephanie L. Haines
United States District Judge